IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERTA F. HARDEN, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 25-881-CFC-EGT |
| ARBOR MANAGEMENT, LLC, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Roberta F. Harden filed this purported civil rights action against Defendant Arbor Management, LLC ("Defendant"). (D.I. 15). Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). The Court proceeds to screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth below, the Court recommends that the Amended Complaint be DISMISSED WITHOUT PREJUDICE.

## I. BACKGROUND

Plaintiff resides in a housing development located in Claymont, Delaware that is managed by Defendant and subsidized by the U.S. Department of Housing and Urban Development ("HUD"). (D.I. 15 ¶¶ 1, 2 & 7). Without specifying what physical or mental impairment she suffers from, Plaintiff alleges that she is a "qualified individual with a disability" and that her therapist "provided documentation verifying Plaintiff's disability and establishing the disability-related need for an Emotional Support Animal." (*Id.* ¶¶ 6 & 8). According to the Amended Complaint, on December 8, 2023, Defendant approved Plaintiff's request to have her emotional support animal at her residence. (D.I. 15, Ex. B; D.I. 15 ¶ 11). But on July 21, 2025, Defendant "denied a subsequent accommodation request related to the [animal]," informing Plaintiff that her request "was not a reasonable accommodation request." (*Id.* ¶¶ 12 & 13). The Amended

Complaint does not specify what additional accommodation Plaintiff requested with respect to her emotional support animal.

In at least May and June 2025, Plaintiff experienced "issues related to [supplemental security income] benefit payments" and was unable to timely pay her rent, incurring late fees from Defendant as a result. (D.I. 15 ¶ 16; D.I. 15, Ex. E). On June 23, 2025, Plaintiff requested that "Defendant adjust rent-related deadlines and waive late fees that accrued due to circumstances related to disability-related income timing." (D.I. 15 ¶ 16; D.I. 15, Ex. E). That same day, Defendant denied Plaintiff's request to waive the fees, advising her to fill out a Reasonable Accommodation Request form. (D.I. 15 ¶ 17; D.I. 15, Ex. E). The Amended Complaint does not specify whether Plaintiff ever submitted the proper form or whether Defendant ever subsequently granted Plaintiff's accommodation request with respect to late fees. Plaintiff also alleges that, at some point, she "complained about conduct by the management that she believed constituted excessive monitoring and reporting of her household activities" and was "informed that information concerning her visitors and household activities was being reported to management by another resident." (D.I. 15 ¶¶ 19 & 20; D.I. 15, Exs. I & J). Also on some undefined date, Plaintiff allegedly "experienced restrictions regarding visitors and guest access that she believes were enforced selectively and differently than for other residents." (D.I. 15 ¶ 22; D.I. 15, Ex. G).

Plaintiff claims that she "filed complaints asserting her rights under federal housing laws and requested reasonable accommodations." (D.I. 15 ¶ 23). Plaintiff does not specify when or where she filed those "complaints" or what "rights" she asserted. Yet Plaintiff alleges that "[f]ollowing those protected activities," "Defendant continued taking adverse actions against Plaintiff, including denying requests, imposing fees, and subjecting Plaintiff to increased scrutiny." (*Id.* ¶ 24).

On July 16, 2025, Plaintiff filed the original Complaint, asserting claims for violation of the Fair Housing Act and Americans with Disabilities Act, among others. (D.I. 2). Plaintiff moved to amend her Complaint on August 29, 2025, which the Court permitted on September 18, 2026. (D.I. 6 & 7). After Plaintiff failed to timely file her Amended Complaint, Judge Connolly dismissed Plaintiff's case for failure to prosecute. (D.I. 8). Plaintiff thereafter twice moved to reopen the case and amend her complaint in December 2025 and February 2026, which the Court subsequently granted. (D.I. 9, 10, 12 & 14). On June 18, 2026, Plaintiff filed the Amended Complaint, accusing Defendant of disability discrimination under the Fair Housing Act (Count I), disability discrimination under Section 504 of the Rehabilitation Act (Count II), retaliation under the Fair Housing Act (Count III) and "Breach of HUD Lease and Federal Housing Obligations" (Count IV). (D.I. 15).

## II. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and view them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when ruling on Rule 12(b)(6) motions.

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provision of 28 U.S.C. § 1915, however, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" entitlement to relief. *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

### A. Count I – Discrimination Under the Fair Housing Act (42 U.S.C. § 3604(f))

The Fair Housing Act, as amended by the Fair Housing Amendments Act ("FHAA"), makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling,

because of a handicap of that person." 42 U.S.C. § 3604(f)(2), (f)(2)(A).[1] Handicap means "a physical or mental impairment which substantially limits one or more of [a] person's major life activities." 42 U.S.C. § 3602(h)(1); *see also 431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020). Discrimination under the FHAA includes a "refusal" to make "reasonable accommodations" in rules, policies, practices or services. 42 U.S.C. § 3604(f)(3), (f)(3)(B); *see also Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). "Whether there has been a 'refusal' to provide a reasonable accommodation under the Fair Housing Act depends on the circumstances." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 110 (3d Cir. 2017). To determine whether an accommodation is "reasonable," courts consider whether the requested accommodation is "(1) reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy housing.'" *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 457 (3d Cir. 2002). "'Necessary' means 'required.' It is a high standard." *Vorchheimer*, 903 F.3d at 105-06 ("Necessities do not include conveniences and creature comforts, much as they are desirable or even helpful.").

Offering no details, Plaintiff conclusorily asserts that she is "disabled within the meaning of the Fair Housing Act." (D.I. 15 ¶ 27). Without more, Plaintiff has failed to plausibly allege that she suffers from a "handicap" within the meaning of the Fair Housing Act (as amended by the FHAA). *See James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) ("At the motion to dismiss stage, . . . we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."). Plaintiff's additional allegations that she is a "qualified individual with a disability," "receives disability-related benefits" and received documentation

---

[1] Congress passed the FHAA in 1988 to extend the Fair Housing Act protections to "people with disabilities." *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005); *see also Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017).

from her therapist verifying her disability (D.I. 15 ¶¶ 6-8) cannot save her claim; as pled, the allegations still provide insufficient detail as to her physical or mental impairments. *See Nunez v. Morgan Props. LLC*, No. CV 25-17084 (RK) (JBD), 2026 WL 1213394, at *6 (D.N.J. May 4, 2026) (dismissing Fair Housing Act discrimination claim where "Plaintiff's Complaint is silent as to any 'handicap' or 'disability' he may possess").

Although unnecessary to reach the issue, Plaintiff also has not adequately alleged that she made a "reasonable" accommodation request. *See Lapid-Laurel*, 284 F.3d at 457. Plaintiff never actually indicates what "accommodation" she requested, alleging only that she was denied a "subsequent accommodation request" related to her support animal and also denied a "meaningful interactive process regarding Plaintiff's disability-related housing needs." (D.I. 15 ¶¶ 12 & 14). Without more information, the Court is unable to reasonably infer that such accommodation requests were "necessary" for Plaintiff to use and enjoy her dwelling. *See Vorchheimer*, 903 F.3d at 105. And even if Plaintiff's request for waiver of late fees was "reasonable" within the meaning of the statute (D.I. 15 ¶ 16), Plaintiff alleges that Defendant merely directed Plaintiff to the appropriate form. (*See* D.I. 15, Ex. E ("Your request below for waiving the late fees of $70.45 is denied. Please complete a Reasonable Accommodation Request form if you wish to request an accommodation specifically for late fees and/or timing of monthly rent payments. Forms are available at the Stoneybrook leasing office.")). Not that Defendant refused her request.

For the foregoing reasons, the Court recommends that Count I be dismissed.

**B. Count II – Discrimination Under the Rehabilitation Act (29 U.S.C. § 794)**

To state a claim for disability-based discrimination under Section 504 of the Rehabilitation Act, "a plaintiff must show that: (1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or other activities

for which a public entity is responsible, or was otherwise subjected to discrimination by a public entity; (4) by reason of his disability." *Montanez v. Price*, 154 F.4th 127, 146 (3d Cir. 2025).[2] Section 504 of the Rehabilitation Act imposes an "affirmative obligation to make 'reasonable accommodations' for persons with disabilities so that they can meaningfully access their programs, services, and activities." *Id.* at 144 (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). "The duty to accommodate is triggered when a disabled person's need for an accommodation becomes known, either because (1) he requests an accommodation or (2) his disability and concomitant need for an accommodation are open and apparent." *Id.* at 148.

As discussed above, Plaintiff's conclusory assertion that she is "a qualified individual with a disability" is insufficient. (D.I. 15 ¶ 34). Congress defined "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1), 12102(1)(A); *see also id.* § 12102(2)(A) (non-exhaustive list of "major life activities" including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working"); 29 U.S.C. § 705(20)(B) (incorporating ADA's definition of "individual with a disability" into Section 504 of Rehabilitation Act). Without more facts alleged, the Court is unable to plausibly infer that Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act. *See Alvarez v. City of Philadelphia*, No. 23-CV-3570, 2023 WL 6520507, at *3 (E.D. Pa. Oct. 4, 2023) (dismissing ADA discrimination claim

---

[2] Substantive standards for determining liability under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA") are "identical," except for causation. *See Montanez*, 154 F.4th at 146. "[U]nder the [Rehabilitation Act], the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation." *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023).

where plaintiff "states only that he requested accommodations for his 'mental health' but provides no details about the alleged mental impairment").

In a similar conclusory fashion, Plaintiff asserts that "Defendant discriminated against Plaintiff because of [her] disability." (D.I. 15 ¶ 36). Under the Rehabilitation Act, Plaintiff must show that she was subjected to discrimination "solely by reason of her or his disability." 29 U.S.C. § 794(a); *see CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 235-36 & n.11 (3d Cir. 2013) (explaining that the Rehabilitation Act's "causation requirement requires disability to be the sole cause of discrimination"). Even assuming that Plaintiff has sufficiently alleged that she was discriminated against in some way by Defendant, the Amended Complaint contains no facts to plausibly suggest that Defendant's alleged discrimination was ***because*** of her disability. *See Smith v. Gourley*, No. 3:24-CV-2196, 2026 WL 360270, at *13 (M.D. Pa. Feb. 9, 2026) ("Conclusory allegations of discrimination, and the failure to accommodate, are insufficient to establish the causation necessary to support a claim that Defendants failed to act solely because of his mental health disability and by reason of his disability.").

Therefore, the Court recommends that Count II be dismissed.

**C. Count III – Retaliation Under the Fair Housing Act (42 U.S.C. § 3617)**

It is unlawful to retaliate against a person who exercises (or attempts to exercise) their rights under the Fair Housing Act. *See* 42 U.S.C. § 3617. To state a claim for retaliation under the Fair Housing Act, a plaintiff must sufficiently allege "(1) she engaged in a protected activity; (2) the defendant subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017); *see also Newell v. Heritage Senior Living, LLC*, 673 F. App'x 227, 231 (3d Cir. 2016). The applicable regulations prohibit retaliation against any person because that person

"made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act" or "reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(5), (6).

The Amended Complaint sets forth two possible "protected activities" – (1) Plaintiff requesting "reasonable accommodations" and (2) Plaintiff's "complaints asserting her rights under federal housing laws." (D.I. 15 ¶ 23). As explained above in Section III.A, Plaintiff's requests for "reasonable accommodations" lack the necessary factual detail to be plausible. And for Plaintiff's "complaints asserting her rights" to qualify as a "protected activity," those complaints must have been regarding the alleged "discriminatory housing practice" (*e.g.*, failure to accommodate), as opposed to "complaints to HUD or the local housing authority about general conditions of the apartment or mismanagement of the apartment complex." *See Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-CV-566-LM, 2019 WL 4647211, at *5 (D.N.H. Sept. 24, 2019). Plaintiff fails to indicate where she filed the "complaints" and, more importantly, what "rights" she asserted. Her allegations of "protected activity" based on those complaints must fail. *See Hill v. Philadelphia Hous. Auth.*, No. 25-CV-3826, 2025 WL 2180522, at *4 (E.D. Pa. July 31, 2025) ("Not only does the Complaint lack details about when Hill complained and to whom she complained, but nothing in the Complaint suggests that Hill's complaints to the PHA (or anyone else) concerned prohibited discrimination (as opposed to the condition of her unit).").

And because Plaintiff fails to indicate when she submitted the generic "complaints" and when she experienced the purported adverse action, the Court is unable to plausibly infer that a "causal link exists between the protected activity and the adverse action." *Lloyd*, 251 F. Supp. 3d at 904; *Equal Emp. Opportunity Comm'n v. Geisinger Health*, No. CV 21-4294-KSM, 2022 WL 10208553, at *14 (E.D. Pa. Oct. 17, 2022) ("To establish the requisite causal connection, a plaintiff

usually must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."). Although "other types of circumstantial evidence" may be used to allege a causal link, the Amended Complaint contains no allegations regarding such evidence. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

The Court thus recommends that Count III be dismissed.

**D. Count IV – Breach of HUD Lease and Federal Housing Obligations**

Although Count IV cites no contract, statute or regulation, it appears that Plaintiff is attempting to assert breach of contract. In Delaware, "the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiffs." *Greenstar, LLC v. Heller*, 814 F. Supp. 2d 444, 450 (D. Del. 2011) (citing *WaveDivision Holdings, LLC v. Millennium Digital Media Sys., L.L.C.*, No. C.A. 2993-VCS, 2010 WL 3706624, at *13 (Del. Ch. Sept. 17, 2010)). Alleging solely that Defendant "improperly assessed charges and fees and failed to administer Plaintiff's tenancy in accordance with HUD requirements" (D.I. 15 ¶ 42), Plaintiff fails to identify any contract – let alone contractual obligation – that Defendant allegedly breached. *See Nieves v. Lyft, Inc.*, No. 17-6146 (FLW) (DEA), 2018 WL 2441769, at *10-16 (D.N.J. May 31, 2018) (dismissing breach of contract claim for failure to plausibly allege contractual obligation). Count IV should be dismissed.

**E. Leave to Amend**

At this point, the Court is unable to conclude that amendment would be futile. The Court thus recommends that Plaintiff's claims be dismissed with leave to amend. But given the procedural history of this case, particularly considering Plaintiff's failure to timely file the Amended Complaint, the Court recommends that only one final opportunity to amend be given.

Any amended pleading filed by Plaintiff must be a comprehensive pleading that stands by itself without reference to previously filed (and dismissed) pleadings and which sets forth the claims in short, concise statements with adequate factual support.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Amended Complaint (D.I. 15) be DISMISSED WITHOUT PREJUDICE. The Court further recommends that Plaintiff be given thirty (30) days from the date this Report and Recommendation is adopted to file an amended pleading.

Plaintiff may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy of the Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *see also* Fed. R. Civ. P. 6(d). Objections are limited to ten (10) pages. The failure of a party to object may result in the loss of the right to review in the district court and the loss of certain appellate rights. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99-100 (3d Cir. 2017).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b)(1) and District of Delaware Local Rule 72.1. Parties are directed to the court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which is available on the court's website, https://www.ded.uscourts.gov.

Dated: August 26, 2026

UNITED STATES MAGISTRATE JUDGE